IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CARLTON SHUTES                                                            PETITIONER
ADC #157103


v.                                    4:20-cv-00424-BSM-JJV


DEXTER PAYNE, Director,
Arkansas Division of Correction                                           RESPONDENT


**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

Petitioner Carlton Shutes, an inmate at the Pine Bluff Unit of the Arkansas Division of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus *pro se*. (Doc. No. 1.) Mr. Shutes was convicted by a jury in Union County of battery in the first degree and possession of a firearm by certain persons. (Doc. No. 9-2.) He was sentenced to an aggregate term of seventy-five years. (*Id.*)

Mr. Shutes filed a direct appeal to the Arkansas Court of Appeals challenging the sufficiency of the evidence. *Shutes v. State*, 2020 Ark. App. 99, at 1. The Arkansas Court of Appeals cited the State's evidence as follows:

> At the jury trial, Willie Simmons testified that he had known Shutes for over thirty years and that they had been smoking marijuana together at Simmons's apartment on July 21, 2017. He said that Shutes asked if he wanted "the last couple of ounces [of marijuana] that he had left," and Simmons accepted. Shutes left and came back after ten minutes. When Shutes knocked, Simmons let him in and

walked away toward the kitchen, and Shutes locked the door and walked toward the living room. Simmons said that when he turned around, Shutes was pointing a pistol at his face. He said that Shutes accused him of trying to set him up, and when Simmons walked toward him, Shutes shot him in the leg. Shutes then pulled out a bag and asked Simmons where he kept the money. Simmons told him he had $330 in his wallet, which was on the kitchen table. When Shutes went toward the kitchen, Simmons went to the front door and crawled through to the sidewalk. He told the people outside to call the police and an ambulance because Shutes had shot him and robbed him. He said that Shutes came out and was standing over him and that he kept hearing a click. After the clicks, Shutes ran down the stairs and away. Simmons said that Shutes stole the money from his wallet and took his cell phone and some cigarettes. Simmons explained that a titanium rod was placed in his leg at the hospital, and he was sent to Little Rock, where his surgery had to be redone. He underwent physical therapy for his leg for two or three months, and he said that he had suffered mentally and emotionally from the incident.

On cross-examination, Simmons identified a picture of his kitchen and said that he recognized a scale on the kitchen table and that he uses the scale to weigh marijuana. He also recognized the police scanner, rolling papers, and sandwich bags on the table.

Dr. Kenneth Gati testified that he is an orthopedic surgeon and that he was called to the hospital to examine Simmons on July 21, 2017. He said that Simmons had been shot in the leg, which was broken into multiple pieces. A metal rod was put into the middle part of the bone to stabilize the leg, and screws were placed through the bone and into the rod. Dr. Gati testified about the risks involved in gunshot wounds and surgery, including scarring, infection, nerve damage, and misalignment of the bones causing one leg to be shorter than the other.

Dorothy Coleman testified that she lives in the apartment below Simmons's. She said that she heard "a commotion" upstairs. When she heard a loud pop, she walked outside, looked up at the balcony, and heard Simmons yelling, "Help me ... he shot me!" She said she did not know what he was saying until the door opened and Simmons fell out. She said that Shutes was standing over Simmons with a gun in his hand. She recognized Shutes and asked him what he was doing. She saw that he was holding a silver gun and that he was trying to load it. She said he was pulling back on the gun while standing over Simmons. She said that Shutes did not respond to her question, and when he stepped over Simmons and came down the stairs, she stepped back into her apartment because she did not know what he was going to do with the gun. She said that he left with the gun in his hand. She said that Shutes had been coming to Simmons's apartment for weeks and that she thought they were friends. After she called the ambulance, she went upstairs, and Simmons asked her to get his phone to call his girlfriend. She said that she did not find a phone in Simmons's apartment and that Simmons told her that Shutes had taken his money.

> Tyrone Hampton testified that he also lives in the same apartment complex and that his apartment is next door to Coleman's. Hampton works with search and rescue for the Union County Sheriff's Office. He said that on July 21, 2017, he was in his apartment when he heard a big boom. Seconds later, he heard Simmons yelling for him. He went out and looked up. He saw Simmons lying on the ground, and Simmons said that Shutes had shot him. He saw Shutes standing over Simmons with a weapon in his hand pointed at Simmons's head. Hampton stepped back in his apartment and used his police radio to call dispatch, and when he stepped back out, Shutes had come down the stairs. Shutes looked directly at Hampton then "took off and ran." He said that Shutes still had the weapon in his hand when he ran.
>
> Tammie Martin testified that she is a criminal investigator for the El Dorado Police Department. She was sent to the scene of the shooting, and she observed blood in front of the apartment and on the door and a pool of blood inside Simmons's residence. She photographed the inside of the apartment. She found a shell casing on the living room floor and the victim's wallet, containing no cash, on the kitchen table, but she did not find any guns. She said that Shutes could not be found, that she eventually enlisted the U.S. Marshal Service to help find him, and that he was found almost a year later.
>
> Scott Harwell testified that he is also a criminal investigator for the El Dorado Police Department and that he, too, was called to the scene that day. He arrived while Simmons was still lying on the second-floor balcony of the apartment complex. He said that Simmons identified his attacker as Shutes. Once Simmons was taken to the hospital by ambulance, Detective Harwell photographed the scene with Detective Martin. He said that Simmons had given them permission to search the apartment and that they found no other evidence aside from the blood and shell casing. He said that they seized the drug paraphernalia and the wallet. He said that they found no firearms, ammunition, marijuana, or narcotics.

*Id*. at 1-5. At the close of the State's evidence, Mr. Shutes' defense counsel made a motion for a directed verdict, arguing no one knew whether Mr. Shutes acted with intent or not. *Id*. at 5. That motion was denied. *Id*. Mr. Shutes then took the stand to testify himself. *Id*. Mr. Shutes claimed that he sold cocaine to Mr. Simmons, which later led to an altercation over the amount of cocaine sold. *Id*. Mr. Shutes claimed they began struggling over Mr. Simmons' gun, which eventually discharged, leading Mr. Shutes to flee. *Id.* at 5-6. Mr. Shutes' counsel then moved for a directed verdict again, which was denied. *Id* at 6. The jury found him not guilty of aggravated robbery but

did find him guilty of first-degree battery and being a felon in possession of a firearm, for which he was sentenced to an aggregate term of seventy-five years. *Id*.

On direct appeal, Mr. Shutes argued the evidence that convicted him was circumstantial, there were no witnesses to corroborate Mr. Simmons' statements, and Mr. Shutes' side of the story was just as believable as Mr. Simmons'. (Doc. No. 9-3 at 64-65.) The Arkansas Court of Appeals affirmed, refusing to consider Mr. Shutes' arguments because they were different than the arguments made in the directed-verdict motion at trial. *Shutes*, 2020 Ark. App. 99, at 7.

Mr. Shutes filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on April 20, 2020. (Doc No. 1.) Mr. Shutes alleges he is being held unlawfully for three reasons: (1) the shooting was negligent because the gun went off during a struggle, he does "not know how [the shooting] happened," and witness Coleman heard a commotion but did not witness the shooting; (2) first-degree battery was not proven because witness credibility went unchallenged; and (3) he never possessed a firearm, a firearm was never found, and the witnesses may have moved the gun because they were biased. (*Id* at 3.) Respondent contends Mr. Shutes' claims are procedurally defaulted and, alternatively, sufficient evidence supports his convictions. (Doc. No. 9.) After careful consideration of the Petition and Response, I recommend this Petition be dismissed with prejudice.

**II.   ANALYSIS**

Respondent contends all of Mr. Shutes' claims are procedurally defaulted. (*Id*. at 4). Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted

unless it appears that the applicant has exhausted the remedies available in the courts of the State")). The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981). In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." *Murphy*, 652 F.3d at 849.

When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted. *Id*. Moreover, if it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman*

*v. Thompson*, 501 U.S. 722, 750 (1991).

All of Mr. Shutes' claims are procedurally defaulted. All three claims essentially allege that the evidence was insufficient for a conviction. Mr. Shutes made this same claim on direct appeal, and the Arkansas Court of Appeals did not consider it since it was not preserved for appeal at trial. *Shutes,* 2020 Ark. App. 99, at 7. An error that bars a claim on direct appeal in state court bars federal habeas review because there is an adequate and independent state-law ground for the conviction and sentence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Mr. Shutes has also failed to allege any cause and actual prejudice or a potential miscarriage of justice.

Additionally, I agree with Respondent that, "In the alternative, substantial evidence supports Shutes's convictions." (Doc. No. 9 at 6.) As recited *supra*, the evidence presented at trial against Mr. Shutes is overwhelming. The jury chose to believe the testimony of the victim and other witnesses and rejected Petitioner's version of events. Deciding what witnesses to believe was the province of the jury. Accordingly, based on the facts of this case, I find Mr. Shutes's petition to be wholly without merit.

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Shutes has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

### IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.	Mr. Shutes' § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) be DISMISSED with prejudice.

2.	A certificate of appealability not be issued.

DATED this 15th day of July 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE